Approved: _____
MICHAEL K. KROUSE
Assistant United States Attorney

Before: THE HONORABLE KEVIN NATHANIEL FOX
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - X
:
UNITED STATES OF AMERICA : SEALED COMPLAINT
:
   - v. - : Violations of 8 U.S.C.
: §§ 1326(a) & (b)(1),
THIODORE IGOROVICH GALITSA, : and 18 U.S.C.
a/k/a "Fyodor Galitsa-Igorovich," : § 1001(a)(2)
   "Tiodore Galitsa," :
   "Fedor Galitsa," : COUNTY OF OFFENSE:
   "Fyodor Halista," : NEW YORK
   "Kres Kornik," :
:
               Defendant. :
:
- - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

      MICHAEL C. O'NEILL, being duly sworn, deposes and says that he is a Senior Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, and charges as follows:

## COUNT ONE
### (Illegal Reentry)

      1. From at least in or about September 2013, in the Southern District of New York and elsewhere, THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, being an alien, unlawfully did enter, and was found in, the United States, after having been removed from the United States subsequent to convictions for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), without having obtained the express consent of the Attorney General of the United States or his successor,

1

the Secretary for the Department of Homeland Security, to reapply for admission.

(Title 8, United States Code, Sections 1326(a) and (b)(1).)

## COUNT TWO
### (False Statements)

2. Between in or about April 2015, and in or about July 2016, in the Southern District of New York, THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully did make a materially false, fictitious, and fraudulent statement and representation, to wit, GALITSA falsely told the Department of Homeland Security that he was not removed from the United States to the Ukraine on or about October 20, 2011.

(Title 18, United States Code, Section 1001(a)(2).)

The bases for my knowledge and the foregoing charge are, in part, as follows:

3. I am a Senior Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), and I have been personally involved in the investigation of this matter. This affidavit is based in part upon my conversations with law enforcement agents and others and my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Illegal Reentry

4. From my review of the records maintained by ICE regarding THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, I have learned, among other things, the following:

a. GALITSA is a native and citizen of the Ukraine. GALITSA is not and has never been a citizen of the United States.

b. On or about September 18, 1996, GALITSA was admitted into the United States on a visitor's visa with authorization to remain in the United States for a period not to exceed March 1997.

c. On or about February 7, 1997, GALITSA was convicted in Kings County Supreme Court of the felony offense of third degree burglary, in violation of New York Penal Law Section 140.20. GALITSA was principally sentenced to 90 days' imprisonment and five years' probation.

d. On or about November 16, 1998, an Immigration Judge ordered GALITSA removed from the United States.

e. On or about December 16, 2004, GALITSA voluntarily departed the United States.

f. On or about August 21, 2008, GALITSA was arrested by a Border Patrol Agent in Texas for attempting to enter the United States on a bus. GALITSA's fingerprints were taken on this date and compared to law enforcement records. The comparison revealed that GALITSA was previously ordered removed from the United States. GALITSA's fingerprints taken on or about August 21, 2008 have since been maintained in law enforcement records.

g. On or about August 22, 2008, GALITSA was convicted of illegal entry, in violation of Title 8, United States Code, Section 1325(a)(1), and sentenced to time served and a special assessment of $10.

h. On or about May 5, 2009, an Immigration Judge reinstated GALITSA's order of removal from the United States.

i. On or about June 12, 2009, GALITSA was removed from the United States on a flight from New York's John F. Kennedy Airport ("JFK Airport"). GALITSA's fingerprints were taken on this date, prior to his deportation, and have since been maintained in law enforcement records.

j. On or about August 14, 2011, GALITSA entered the United States illegally by wading across the Rio Grande River near Roma, Texas.

k. On or about August 26, 2011, GALITSA was arrested by a Border Patrol Agent in Texas. GALITSA's fingerprints were taken on this date, and have since been maintained in law enforcement records.

l. On or about August 29, 2011, GALITSA was convicted of illegal entry, in violation of Title 8, United States Code, Section 1325(a)(1), and sentenced to 15 days' imprisonment and a special assessment of $10.

m. On or about October 20, 2011, GALITSA was removed from the United States on Aerosvit Flight Number 132 (the "Flight"), which left JFK Airport and landed in the Ukraine. GALITSA's fingerprints were taken on this date, prior to his deportation, and have since been maintained in law enforcement records.

5. Based on my review of records related to the Flight, as well as my review of law enforcement databases, I have learned, among other things, the following:

a. Aerosvit Flight Number 132 left JFK on or about October 20, 2011 at approximately 7:05 p.m., and arrived in the Ukraine on or about October 21, 2011 at approximately 12:05 p.m.

b. Commercial air border crossing records show that the airline reported to U.S. Customs and Border Protection that THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, was on board the Flight, and that the Flight crossed the U.S. border on or about October 20, 2011 at approximately 9:04 p.m.

c. The two ICE officers responsible for deporting GALITSA signed a standard ICE Form (the "Form"). On the Form, one ICE officer ("Officer-1") certified that he or she witnessed GALITSA's departure, and the other ICE officer ("Officer-2") verified GALITSA's departure.

6. Based on my review of bank records, I have learned, among other things, the following:

4

a. On or about August 23, 2011, THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, opened a bank account (the "Bank Account"). The same day, $50 was deposited into the Bank Account at a branch located in McAllen, Texas. As stated above, GALITSA illegally entered the United States on or about August 14, 2011, and was arrested in Texas on or about August 26, 2011. See supra ¶¶ 4(j)-(k). Therefore, it appears that GALITSA opened the Bank Account after he illegally entered the United States, but before he was arrested.

b. On or about August 24, 2011, $580 was transferred into the Bank Account from an account located in Manhattan, New York. On or about August 26, 2011, $200 was transferred into the Bank Account from an account located in Manhattan. In the course of this investigation, I have learned that GALITSA's mother lives in Manhattan.

c. From on or about August 23 through on or about August 25, 2011, four ATM withdrawals totaling $611 were made from the Bank Account.

d. After GALITSA was arrested on August 26, 2011, the Bank Account was dormant for several months.

e. As stated above, GALITSA was deported on a flight that left JFK on or about October 20, 2011, and arrived in the Ukraine on or about October 21, 2011. See supra ¶ 5(a).

f. On or about October 21, 2011, an ATM withdrawal of $124.98 was made from the Bank Account. The location of this ATM withdrawal was Kiev, Ukraine. Thereafter, from on or about October 21, 2011 up to and including on or about July 9, 2013, all of the withdrawals from the Bank Account originated in the Ukraine or in other European cities. No withdrawals from the Bank Account originated in the United States.

g. On or about September 5, 2013, a service fee of $2 was charged for a balance inquiry from "GREYHOUND-M." Based on my participation in this investigation, I know that Greyhound is an American bus company. On or about September 16, 2013, $60 was withdrawn from an ATM in Manhattan.

h. Based on my review of records from the Bank Account, as well as the above described ICE and airline records,

it appears that GALITSA was deported from the United States to the Ukraine on or about October 20, 2011, that he resided in the Ukraine for a period of time beginning on or about October 21, 2011, that he illegally entered the United States in or about September 2013, and that he traveled to Manhattan, arriving some time before on or about September 16, 2013.

7. Based on my review of criminal history records for THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, I have learned, in substance and in part, the following:

    a. On or about July 14, 2014, GALITSA was arrested by the New York City Police Department ("NYPD"), and charged with grand larceny, attempted forgery, identity theft, and possession of stolen property.

    b. On or about January 30, 2015, GALITSA was arrested by the NYPD, and charged with petit larceny and possession of stolen property.

    c. On or about June 22, 2015, GALITSA was arrested by the NYPD, and charged with petit larceny and possession of stolen property. On or about January 25, 2017, GALITSA was convicted of both charges and sentenced to serve 45 days' imprisonment.

8. On or about April 15, 2015, THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, was administratively arrested by ICE for illegal reentry. ICE took GALITSA's fingerprints incident to this arrest.

9. Based on my review of fingerprint records, the fingerprints ICE took from THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, on or about April 15, 2015, match fingerprints taken from GALITSA on the following occasions: on or about August 21, 2008, at the time of GALITSA's arrest that resulted in his conviction for illegal entry; on or about June 12, 2009, at the time of GALITSA's deportation; on or about August 26, 2011, at the time of GALITSA's arrest that resulted in his conviction for illegal entry; and on or about October 20, 2011, at the time of GALITSA's deportation.

10. A search of all relevant Department of Homeland Security indices has confirmed that, following his removal from the United States on or about October 20, 2011, THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, never obtained the express consent of the Attorney General of the United States, or the Secretary for the Department of Homeland Security, to reapply for admission to the United States.

False Statements

11. As stated above, on or about April 15, 2015, THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, was arrested by ICE for illegal reentry. See supra ¶ 6. Based on my review of law enforcement reports, my conversations with witnesses, and my participation in this investigation, I know that GALITSA made several statements to federal law enforcement officers, including, in substance and part, the following:

   a. On or about April 15, 2015, GALITSA told the ICE officers processing his arrest that he was not deported in 2011. According to GALITSA, the ICE officers responsible for ensuring that GALITSA boarded the Flight ("Officer-1" and "Officer-2"), see supra ¶ 5(d), instead released him in JFK Airport.

   b. On or about June 29, 2015, two agents from ICE interviewed GALITSA in Manhattan, New York. During the interview, GALITSA stated, in substance and in part, that Officer-1 and Officer-2 decided to set him free in the United States instead of ensuring that he boarded the Flight. GALITSA claimed that he did not board the Flight, and that he took a taxi to the vicinity of Madison Square Garden. GALITSA stated that he called his mother and told her that he was not being deported.

   c. On or about July 27, 2016, I and another ICE agent interviewed GALITSA in Manhattan. During the interview, GALITSA stated again, in substance and in part, that Officer-1 and Officer-2 released him instead of ensuring that he boarded the Flight. Unlike his previous statement, however, GALITSA claimed that he initially did not want his mother to know that he was in the United States. GALITSA claimed that he lived on

7

the street for a year or two, before going to live with his mother in or about 2013.

        d.    I interviewed Officer-1 and Officer-2 separately. Both officers stated, in substance and in part, that, while they do not recall GALITSA specifically, they would not have released a person with a deportation order. Both officers also stated that they signed the Form verifying GALITSA's removal.

    12.    Based on my interviews of witnesses, as well as my review of law enforcement records, flight records, and records from the Bank Account, it appears that THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, was removed from the United States to the Ukraine on or about October 20, 2011. Accordingly, it appears that the statements GALITSA made to law enforcement officers to the contrary are false.

    WHEREFORE the deponent requests that a warrant be issued for the arrest of THIODORE IGOROVICH GALITSA, a/k/a "Fyodor Galitsa-Igorovich," a/k/a "Tiodore Galitsa," a/k/a "Fedor Galitsa," a/k/a "Fyodor Halista," a/k/a "Kres Kornik," the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

                                                      _____
                                                      MICHAEL C. O'NEILL
                                                      Senior Special Agent
                                                      Immigration and Customs Enforcement

Sworn to before me this
24th day of April 2017

_____
THE HONORABLE KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK