UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA

        v.                     17 CR 324 (VEC)

THIODORE IGOROVICH GALITSA,

                                 Sentence

             Defendant.

------------------------------x

                            New York, N.Y.
                            March 16, 2018
                            3:00 p.m.

Before:

        HON. VALERIE E. CAPRONI

                            District Judge

        APPEARANCES

GEOFFREY S. BERMAN
     Interim United States Attorney for the
     Southern District of New York
MICHAEL K. KROUSE
JESSICA GREENWOOD
     Assistant United States Attorney

FEDERAL DEFENDERS OF NEW YORK, INC.
     Attorneys for Defendant
BY:  MARTIN S. COHEN

1           (Case called)

2           MR. KROUSE:  Good afternoon, your Honor.  Michael

3   Krouse and Jessica Greenwood for the United States.

4           THE COURT:  Good afternoon.

5           MR. COHEN:  Good afternoon, your Honor, Martin Cohen

6   from the Federal Defenders on behalf of Mr. Galitsa.

7           THE COURT:  Is that your mother who is here today?

8           MR. COHEN:  Your Honor, Mr. Galitsa's mother has been

9   unable to come to court because of her caretaking

10  responsibilities for her patient.  Carol Angelino, one of his

11  clients, is here.  She was also here for part of the trial.

12          THE COURT:  I remember.  Terrific.

13          Before we proceed to sentencing, the Court is prepared

14  to rule on the defendant's motion for a new trial pursuant to

15  rule 33 and a motion for mistrial that the Court previously

16  reserved on.  Does anyone want to say anything more about those

17  issues?

18          MR. KROUSE:  No, thank you, your Honor.

19          MR. COHEN:  No, your Honor.  Thank you.

20          THE COURT:  The defendant argues that it was error to

21  permit the government to cross-examine him regarding alle-

22  gations that he stole $25,000 from a former employer by forging

23  checks.  Even if this alleged bad act were admissible pursuant

24  to 608, the defense argues it was error to permit the

25  government to mention that he was arrested in connection with

these allegations and on other occasions.

The Court disagrees.  It was not error to permit the
government to cross on these bad acts, and any error from
permitting this line of questioning or mention of Mr. Galitsa's
prior arrest was harmless.  Rule 33 authorizes the Court to set
aside a verdict and grant a new trial if the interests of
justice so requires.  It is appropriate to grant a new trial
pursuant to rule 33 if there is a manifest injustice such that
there is a real concern that an innocent person may have been
convicted.

To begin with, the allegations that Mr. Galitsa stole
$25,000 from a former employer were admissible.  As the Court
ruled in connection with the parties' motions in limine, rule
608 permits cross-examination into bad acts that are probative
of the witness's character for truthfulness.  Mr. Galitsa
concedes that.  That is in his memo at 17 to 18.  But Mr.
Galitsa argues that the allegations against him should have
been excluded pursuant to rule 403 because the prejudicial
impact of the allegations outweighed their probative value.

Recent allegations that Mr. Galitsa defrauded his
employer were highly probative of Galitsa's credibility.  The
fact that the charges against Mr. Galitsa were ultimately
dropped does not mean the allegations were so unlikely to be
true that admitting them was unfairly prejudicial.  There was
an adequate factual basis for the allegations against Galitsa,

1   including that he was paid an excessive amount for the work

2   done, the checks were cashed out of order, and the victims said

3   that they were stolen.

4            Rule 403 does not require the Court to preclude bad

5   acts that might not be provable beyond a reasonable doubt.  By

6   comparison, in the <u>Schwab</u> case cited by Galitsa, the defendant

7   may have been acquitted of charges related to the alleged bad

8   act.  The allegations were 18 to 20 years old, and there was no

9   new evidence that the allegations were true.  The defendant's

10  real beef is with the Court's timing of ruling on this issue.

11           In pretrial motion practice, the government noted that

12  Mr. Galitsa had a sealed arrest record from July 2014 but that

13  no other information regarding the arrest was available.  The

14  Court held that the government could not introduce this arrest

15  record in the event Galitsa testified pending more information.

16           Although the parties ran through the arrest before

17  trial, no information was provided to the Court until a sidebar

18  after Galitsa's direct testimony was completed and immediately

19  before the government's cross.  Thus, at the time Galitsa

20  decided to testify, he did not know whether the government

21  would be permitted to cross-examine him regarding these

22  allegations.

23           The Court agrees with the government's admission that

24  best practice would have been to raise the admissibility of

25  these allegations with the Court earlier.  Nonetheless, Galitsa

1    cited to no rules of evidence or case law that requires the

2    Court to rule on these issues in advance.

3         At the time Galitsa decided to testify, he and his

4    attorney were aware of the government's further investigation

5    into the issue, that the admissibility of the allegations was

6    unresolved, and that there was a possibility that the

7    government would seek to question him regarding the

8    allegations.

9         The government's failure to reraise the issue in

10   limine was not entirely unreasonable inasmuch as it was not

11   informed that Galitsa would testify until moments before he

12   took the stand.  As the Court noted when this issue was

13   discussed at trial, either side could have moved in limine on

14   the issue.  The timing of the Court's ruling did not prejudice

15   Galitsa's right to make a fully informed decision whether to

16   testify.

17        Next, Galitsa argues the government improperly

18   mentioned his arrests in 2014 and 2015.  The underlying

19   allegations that Galitsa stole from his former employer and

20   shoplifted were fair game under rule 608, but the mere fact

21   that he was arrested was not.

22        Nonetheless, the government's mention of these arrests

23   was not so prejudicial that a new trial is required.  The Court

24   instructed the jury to disregard the government's reference to

25   Galitsa's prior arrests and made clear that no inference could

1  be drawn from them.  The Court must assume the jury followed

2  those instructions.

3         Most important, there was a veritable avalanche of

4  evidence from which the jury could conclude that Galitsa was

5  guilty.  It is not correct to say, as Mr. Galitsa argues, that

6  this case hinged on Mr. Galitsa's credibility.  For the jury to

7  accept Mr. Galitsa's alibi, it would have been required to

8  credit his testimony and discredit the testimony of ICE agents

9  who testified to the procedures followed in removing Mr.

10  Galitsa, contemporaneous notes taken by the ICE agents, and ICE

11  records bearing Mr. Galitsa's fingerprints that confirmed his

12  removal, passenger manifests and Ukrainian border records

13  confirming that Mr. Galitsa was on the plane to Ukraine and

14  arrived in Kiev, and bank records showing that Mr. Galitsa's

15  bank card was used in Kiev on the day his flight arrived in

16  Ukraine and that appeared to track Mr. Galitsa's movements as

17  he moved around Eastern Europe before returning to the United

18  States.

19         Moreover, Mr. Galitsa's alibi required the jury to

20  find that the ICE agents were lying and had set Mr. Galitsa

21  loose, a man they had just met at JFK, for no apparent reason

22  and at great personal and professional risk.  Thus, to the

23  extent there was any error either in mentioning Mr. Galitsa's

24  arrests or in admitting allegations that he defrauded his

25  former employer, the error was harmless.

1          Mr. Galitsa's motion for a mistrial is denied, and the

2     clerk of court is directed to close the open motion at docket

3     85.

4          With that, I'm prepared to proceed to sentence.  Mr.

5     Cohen, have you and your client read the pre-sentence report

6     dated February 2nd?

7          MR. COHEN:  Yes, your Honor.

8          THE COURT:  Mr. Galitsa, did you read the pre-sentence

9     report?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Did you discuss it with your lawyer?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Are there any objections to the report?

14          MR. COHEN:  No, your Honor.

15          THE COURT:  The pre-sentence report will be made part

16     of the record in this matter and placed under seal.  If an

17     appeal is taken, counsel on appeal may have access to the

18     sealed report without further application to this Court.

19          I received a sentencing submission from the defense

20     dated March 9, 2018, that included letters from Mr. Galitsa's

21     mother, a family friend, and four different clients.  I read

22     all the letters.  Thank you for your letter.

23          I also received a letter from the government dated

24     March 9, 2018.

25          The next step is the guidelines calculation.  Please

1    excuse this.  This is going to sound like total gobbledygook.

2          The defendant was convicted after trial of one count

3    of illegal reentry in violation of the immigration laws and one

4    count of making a false statement in violation of 1001.  The

5    pre-sentence report reflects a guidelines level of 12, criminal

6    history II, which yields a guideline sentence of 12 to 18

7    months.

8          The government argued that the grouping rules should

9    not apply because the illegal reentry and false statements were

10   years apart and did not have the same victim or plan.

11   Probation rejected the government's argument, and the

12   government did not press it in its sentencing submission.

13         I think it is a close case but that the better view of

14   the guidelines is the one argued by the government.  The victim

15   of the false statements in which he accused the ICE agents of

16   letting him go at JFK is the societal interest in ensuring law

17   enforcement receives accurate information which they are

18   collecting information during an investigation.  The victim of

19   the illegal reentry is the societal interest in controlling our

20   borders.  This case is different from an illegal entrant

21   showing false documents at the border, which it seems to me

22   probation was focusing on, where you would group the two

23   crimes.

24         The Ninth Circuit dealt with this issue in United

25   States v. Gastelum-Almeida, 298 F.3d 1167 (9th Cir. 2002).  In

1    that case it determined that although society at large is the

2    victim of both the 1001 charge and the alien smuggling charge,

3    the interests themselves were sufficiently distinct that

4    grouping was not appropriate, using the terminology of 3D1.2A

5    because different victims were involved.  For that reason I

6    also think that the counts should not be grouped.

7          I therefore find the correct guidelines calculation to

8    be as follows.  For the illegal reentry, the base offense level

9    is set out in 2L1.2, and it's 8.  Because this offense was

10   committed after two prior misdemeanor convictions for illegal

11   entry pursuant to 2L1.2(b)(1)(B), it's plus 2.  Because Mr.

12   Galitsa obstructed the investigation by producing false tax

13   returns and, in my view, committing perjury at trial.  Pursuant

14   to 3C1.1, plus 2.  That brings the total to 12.

15         In terms of the false statement, the base offense

16   level is found at 2B1.1, and it's 6.  Again an obstruction of

17   justice enhancement is appropriate because he lied at trial.

18   Pursuant to 3C1.1, plus 2, bringing the total to 8.

19         That brings us to the multiple count adjustment.

20   Pursuant to 3D1.4, the highest group gets 1 unit.  The next

21   group, which would be the 1001 count, gets 1 unit because it is

22   4 levels or less away.  2 units increase the highest level by

23   2.  12 plus 2 equals 14.

24         In terms of criminal history, Mr. Galitsa has 3

25   criminal history points, 1 for his 2008 conviction for illegal

1   reentry, 1 for his 2011 conviction for illegal reentry, and 1

2   for his 2015 petit larceny conviction.  3 criminal history

3   points puts him at criminal history category II.  Level 14,

4   criminal history category II yields a guideline range of 18 to

5   24 months.

6           Let me say that although my calculation is higher than

7   probation, my sentence will be the same under the probation

8   department's calculation as well.

9           Are there any guidelines arguments that I have not

10  addressed or that you would like to be heard on?

11          MR. KROUSE:  No.  Thank you, your Honor.

12          MR. COHEN:  No, your Honor.

13          THE COURT:  I don't see a grounds for departure under

14  the guidelines.  Would the government like to be heard?

15          MR. KROUSE:  Yes, your Honor.  The Court is obviously

16  very familiar with this case, so I won't belabor our arguments.

17  The government believes a guidelines sentence is appropriate in

18  this case for all the reasons stated in the government's

19  submission.

20          First, this is the third time that the defendant has

21  illegally reentered the country.  He has clearly not been

22  deterred based on his previous arrests for illegal reentry and

23  his convictions.  He also then lied repeatedly to agents about

24  not being on this deportation flight.  He went to the extreme

25  length of creating false tax returns to that end in order to

1    corroborate these lies.

2           He also, as a result of all those lies, caused the

3    government to expend significant resources investigating

4    whether or not he was on that flight when he plainly was.  This

5    subjected the deportation officers to the inconvenience of

6    being investigated, fearing for their own careers, all based on

7    a frankly absurd lie that he continued to press all the way

8    through trial.

9           Then, as the Court alluded to, Mr. Galitsa took the

10   stand in open court, in federal court, swore to tell the truth,

11   and then committed perjury.  That perjury was exactly the same

12   lie that he had been pressing this entire time.

13          In light of the blatant dishonesty and blatant

14   disregarded for the law, the government believes that a

15   guideline sentence, a substantial sentence of imprisonment, is

16   appropriate in this case both because of the nature of the

17   offense and the seriousness of the offense, also to deter Mr.

18   Galitsa from further efforts to re-enter the country illegally

19   and further efforts if he is caught reentering the country

20   illegally to then continue to lie in an effort to stay in the

21   country despite his criminal acts.

22          THE COURT:  Thank you, Mr. Krouse.

23          Mr. Cohen.

24          MR. COHEN:  Thank you very much, your Honor.  In

25   sentencing Mr. Galitsa, the Court is going to take into account

1    his background and characteristics along with the nature of

2    this offense.  I think the letters to the Court provide some

3    important color for the person that Mr. Galitsa is apart from

4    these offenses.

5         You got the letter from his mom, which is important,

6    but I was struck by the letters from all of the clients that he

7    has.  They uniformly describe someone who does not just do

8    great work but who they spent significant amount of time with

9    and was able to do all different types of things and who they

10   have come to know as a person to rely on.  They got to see him

11   as a person taking care of his mom, taking care of her

12   patients.

13        I have my doubts sometimes.  I can't imagine going to

14   someone's trial and writing a letter on their behalf.  I don't

15   know the first thing about them.  So I think it is an important

16   piece of who Mr. Galitsa is and his many talents.  He is a

17   writer as well and has the capability of doing great things

18   once he is released from incarceration.

19        Even if the Court agreed with our requested sentence,

20   which it probably won't, of a year and a day, it is going to be

21   by far the longest period of time that Mr. Galitsa has been

22   incarcerated.  The MCC and MDC are not easy places to be, but

23   we are going to ask the Court to allow him to stay there.  Most

24   likely he will be designated to Moshannon Valley, which is

25   where all of the people who aren't in the country legally tend

1    to go after they are sentenced here.

2              THE COURT:  Where is that?

3              MR. COHEN:  That is in the recesses of Pennsylvania,

4    pretty difficult to get to.  Whatever additional time he gets,

5    he is going to be isolated, he is not going to be visited by

6    anyone, and it is going to be pretty much pure punishment.

7    That is a sentencing purpose, but there are other purposes as

8    well as, as the Court is well familiar.

9              This is going to be his own decision.  But as we

10   indicated in our papers, Mr. Galitsa intends to seek relief

11   from his removal from the country, so he will be incarcerated

12   for probably a significant period of time on top of that, which

13   is something the Court can take into account.

14             We are certainly not resting our argument on that,

15   although we do think the Court should consider those three

16   months that he is not going to get credit for when he was

17   incarcerated between his arrest and the end of April and his

18   release on bail in August because, as the Court remembers, he

19   was nominally in ICE custody.

20             Mr. Galitsa is a very complicated person.  The

21   government has brought out the bad things on the ledger.  I

22   hope in our submission we have brought out the good.  The Court

23   needs to consider both.  On balance, I think Mr. Galitsa has a

24   lot to offer the world.  He is certainly an important person to

25   his family and his friends and his clients.  So I urge the

1    Court to take all of those things into consideration in

2    sentencing Mr. Galitsa.

3              Thank you very much, your Honor.

4              THE COURT:  Thank you, Mr. Cohen.

5              Mr. Galitsa, would you like to be heard?

6              THE DEFENDANT:  Thank you, your Honor, no.

7              THE COURT:  Mr. Galitsa, federal law requires me to

8    consider the nature and the circumstances of the offense and

9    the history and characteristics of the defendant.  I am

10   required to impose a sentence that is reasonable and no greater

11   than necessary to accomplish the goals of sentencing.  In this

12   case the crime, to me, is a sad one.  No matter how someone

13   views the immigration laws, it is sad to put someone in jail

14   who just wants to live in the United States.

15             In terms of the history and characteristics of the

16   defendant, Mr. Galitsa has been far from a model immigrant.

17   Putting aside the burglary when he was very young, he has

18   engaged in a series of petty and some more than petty offenses

19   while in this country.  Not counting the alleged robbery from

20   the old man with Parkinson's, as to which I find the evidence

21   somewhat equivocal, he was convicted of petty theft from Home

22   Depot.  That was after trial.

23             While the petty theft is unacceptable, there clearly

24   is another side to Mr. Galitsa.  I take to heart the letters I

25   received from his clients, who stress what a good worker he is.

1    I know good handymen are hard softened, and it sounds to me Mr.

2    Galitsa was in fact a good handyman.  I would also note that

3    unlike many defendants that we all see in this courthouse every

4    day, Mr. Galitsa has skills and appears to have always had

5    gainful employment while he was in the United States, something

6    that I cannot say of many defendants that I sentence.

7           I have considered all of the sentencing factors,

8    including the history and characteristics of the defendant.

9           In terms of the seriousness of the defense, reentry is

10   not the most serious of all offenses.  It happens all the time.

11   But lying to the ICE agents and casting a shadow over the

12   agents who deported you, Mr. Galitsa is a serious crime.  Your

13   lying, whether you knew this or not, seriously upset those

14   people' careers, and it took ICE and the government a long time

15   to unravel what happened here.  You doubled down on the lie

16   with no concern about the agents.  You falsified tax returns.

17   There is no question in my mind that you lied on the stand

18   about what happened.  All of that adds up to a more serious

19   offense.

20          I have considered the need to promote respect for the

21   law.  I have serious doubts that Mr. Galitsa has respect for

22   the law.  From the petty offenses to the more serious, Mr.

23   Galitsa seemed to be most concerned about Mr. Galitsa.

24          I have considered the need to impose just punishment

25   while avoiding unwarranted disparities between similarly

1    situated defendants.  As a general rule, illegal reentry, at

2    least as of now, does not carry a very stiff sentence across

3    the country.

4         The statistics I have found, which are probably not

5    complete and they tend to be a little bit old, show that the

6    average sentence for illegal reentry is 18 months and the

7    median is 12 months.  That said, Mr. Galitsa is somewhat

8    outside the heartland both because of the numbers of times he

9    has reentered the country and because of his decision to lie

10   when he got caught.

11        I have considered the need to deter criminal conduct.

12   This is to me in this case the most important of all factors.

13   Mr. Galitsa, deterrence under U.S. law has two elements.  It

14   has what is called general deterrence and specific deterrence.

15   General deterrence is how do we deter society at large from

16   committing crimes.  For illegal reentry, it would be how do we

17   deter generally people from illegally reentering the country

18   that they have been once removed.  Specific deterrence is how

19   do we deter you.

20        In terms of general deterrence, I have no illusions

21   that no matter what I do here, it is not going to have any

22   impact on people who want to re-enter the country.  I know

23   that.  I am more concerned about specific deterrence.  Mr.

24   Galitsa, I am sympathetic that you want to live in the United

25   States.  This is the best place in the world to live.  I'm

1    sympathetic that you don't want to live in the Ukraine.  Your

2    mother lives here.  I get it that you want to be here.

3           You cannot come back to the country.  You cannot

4    illegally enter this country.  The sentence has to be long

5    enough for you to understand that you don't want to return to

6    the States because you don't want to risk being caught again

7    and going back to jail again.  You've got to stay in the

8    Ukraine or wherever, but you can't re-enter this country.

9           In terms of protection of the public and the need to

10   provide the defendant with educational or vocational training,

11   I don't find those to be relevant factors here at all.  Again,

12   aside from petty crimes, I don't see Mr. Galitsa as a major

13   threat to society, and he actually has a lot of skills.

14          While my sentences are rarely within the guideline

15   range, in this case I find that the guideline range is just

16   about right, whether it was 12 to 18 months or 15 to 21 months

17   or the guideline range which I found was relevant, which was 18

18   to 24 months.  I have considered the 3 months that Mr. Galitsa

19   spent in ICE custody that he is not going to get credit for.

20          Taking all that into account, I am going to sentence

21   the defendant to the custody of the Attorney General for a

22   period of 15 months on Counts One and Two concurrent to each

23   other, to be followed by 2 years of supervised release on

24   Counts One and Two, also concurrent to each other.

25          Because the guideline range is 18 months, this is

1   actually a slight downward variance from the guideline range

2   that I find is applicable to this case.  Although I'm

3   downwardly departing, Mr. Galitsa, please let me tell you again

4   you can't come back to the country.  I know that you want to

5   and I appreciate that you want to, but you can't.

6           I am not imposing a fine because I find that there is

7   no ability to pay a fine.

8           There are mandatory conditions of supervised release.

9   I am imposing a term of supervised release in the off chance

10  that you are actually paroled into the country or that they

11  grant your asylum request and you are allowed to stay.  If so,

12  you will be under supervised release.

13          The terms of supervised release are that you may not

14  commit another crime, you cannot illegally possess a controlled

15  substance, you cannot possess a firearm or other destructive

16  device.  I am suspending the mandatory drug testing condition

17  because the defendant poses a low risk of substance abuse.

18          In addition to the standard conditions of supervision,

19  I am imposing the following special condition.  Mr. Galitsa

20  must obey the immigration laws and cooperate with the

21  immigration authorities.  In the event you are released, Mr.

22  Galitsa, you must report to the nearest probation office within

23  72 hours of release, and you will be supervised by the district

24  of residence.

25          There is no forfeiture or restitution in this case.  I

1   must impose a special assessment of $200.

2            Mr. Cohen, do you have any request on designation?

3            MR. COHEN:  Yes, your Honor.  Although we expect that

4   he will end up in Moshannon Valley, we would respectfully

5   request that the Court recommend that Mr. Galitsa be allowed to

6   remain at the MDC to facilitate family visitation.

7            THE COURT:  Do you actually request MDC, not MCC or

8   MDC?

9            MR. COHEN:  MDC, your Honor.

10           THE COURT:  Ms. Galitsa, I will make the request that

11  you be designated to MDC.  I don't have any of any control over

12  it, but I will make the request.

13           MR. COHEN:  Thank you, your Honor.

14           THE COURT:  Mr. Galitsa, you have the right to appeal

15  your conviction and sentence.  If you are unable to pay the

16  costs of an appeal, you may apply for leave to appeal in forma

17  pauperis.  The notice of appeal must be filed within 14 days of

18  the judgment of conviction.

19           Anything further?  Ms. Greenwood?

20           MS. GREENWOOD:  Not from the government.

21           THE COURT:  Mr. Cohen?

22           MR. COHEN:  No, your Honor.  Thank you very much.

23           THE COURT:  Mr. Galitsa, good luck.

24           (Adjourned)

25